721 So.2d 1230 (1998)
CITY OF NORTH BAY VILLAGE and I.S.A.C., Appellants,
v.
James V. MILLERICK, Appellee.
No. 98-761.
District Court of Appeal of Florida, First District.
December 21, 1998.
H. George Kagan and Elliot B. Kula of Miller, Kagan, Rodriguez & Silver, P.A., West Palm Beach, for Appellants.
Joseph Hackney, Jr., P.A., Miami, for Appellee.
PADOVANO, Judge.
The City of North Bay Village and its servicing agent appeal a final order awarding workers' compensation benefits to James Millerick, for injuries he sustained in an automobile accident. We conclude that Millerick's injuries are not compensable because he was off duty and not engaged in his primary responsibility as a police officer at the time of the accident. Therefore, we reverse.
Millerick was a sergeant with the North Bay Village Police Department. He testified that he went out to have a drink and to socialize at approximately 10:00 p.m., on September 18, 1987, after his work shift had ended. During the course of the evening, he visited a number of clubs and bars in the area of North Bay Village. At 2:00 a.m., he arrived at Happy's Bar, his fifth stop of the evening. There he encountered a woman who had given him information leading to the arrest of a drug suspect named Angel Ortiz. Millerick spoke with the woman for a while but he neglected to tell her that Ortiz had been arrested. The woman left and eventually Millerick left, as well, to go to another bar.
Later that night, Millerick decided that the woman might be in danger and he went to several other bars in an effort to locate her. He went to the Polo Club, a bar in North Miami Beach where he thought he might find the woman. By this time it was 5:00 a.m. He did not find the woman there but he struck up a conversation with Billy Martino, another man thought to be involved in illegal drugs. At some point in the conversation, Millerick provoked Martino by stating that he knew what kind of person Martino was, and that he knew Martino's niece was dating a drug dealer. Martino responded by striking Millerick with his fist and announcing to the other bar patrons in a loud voice that Millerick was a police officer.
Following this confrontation, Millerick walked out of the bar and started a conversation with the bouncer. He was outside for about twenty minutes and then he decided to go back into the Polo Club to pay his bar tab. *1231 As he was walking back toward the club, he observed two unidentified men coming toward him yelling, "Hey, you!" Millerick said that he thought he should try to get away from the two men since the Polo Club was a known hangout for drug dealers and because he had been revealed as a police officer. Millerick said that he got into his car, locked the door, and started the engine. The two men reached his car before he could leave and began pounding on the window with what appeared to be a pistol. Millerick then drove away in the direction of North Bay Village, which was just across the causeway from the Polo Club.
Millerick said that he noticed a car following him and he thought that the men in the car were the two men he had just encountered in the parking lot of the Polo Club. He drove away at a high rate of speed and lost control of his car as he was attempting to cross the bridge on the causeway. He crossed over the median of the bridge into oncoming traffic and collided with a car traveling in the opposite direction. As a result of the collision, the driver of the other car was killed, and Millerick was seriously injured.
Detective William Nevers of the North Bay Police Department testified that the Department encourages its officers to report any criminal activity they observe, and that it would not be unusual for an officer to carry out a police function while off duty. He added, however, that the Department does not approve of the use of alcohol during undercover operations or any other police activity. Sergeant Millerick admits that he consumed alcoholic beverages throughout the course of the evening. He denies that he was impaired but concedes that he was feeling the effects of the alcohol.
On October 10, 1989, Sergeant Millerick filed a petition for benefits under the Workers' Compensation Law. The case remained on the docket for nearly six years after the initial hearing on the issue of compensability. During that time, the parties presented arguments in an interlocutory appeal and several other hearings before the judge of compensation claims. On February 17,1998, the judge rendered a final order awarding Millerick disability benefits. This order was based on the judge's earlier conclusion that Millerick had been engaged in his primary duty as a police officer at the time of the accident. The City of North Bay Village and its servicing agent then filed a timely notice of appeal.
Section 440.09(1), Florida Statutes, limits an employee's right to obtain workers' compensation benefits to injuries "arising out of work performed in the course and the scope of employment." Whether a police officer was acting in the course of employment is an issue governed by a special rule. As provided in section 440.091, Florida Statutes, a police officer who was discharging a primary law enforcement responsibility "shall be deemed to have been acting in the course of employment" regardless of the officer's duty status at the time.[1] A police officer who meets the conditions of the statute can recover workers' compensation benefits for an injury sustained even at a time when the officer was off duty.
Evidence that a police officer was prepared to discharge a law enforcement duty is not alone sufficient to justify a finding that an injury arose in the course of the officer's employment. For example, in Palm Beach County Sheriff's Office v. Ginn, 570 So.2d 1059 (Fla. 1st DCA 1990), we held that a deputy sheriff was not engaged in his primary responsibility merely because he had been monitoring his police radio and was on call at the time he was injured. Likewise, in City of Fort Lauderdale v. Abrams, 561 So.2d 1294 (Fla. 1st DCA 1990), we held that a forensic detective was not carrying out her primary responsibility even though she had her crime scene investigation kit and police radio with her at the time of her automobile accident. As these cases illustrate, the officer must be engaged in a primary law enforcement duty at the time of the event that caused the injury.
Section 440.091 is often applied when an off-duty police officer is suddenly thrust into *1232 a situation that requires the performance of an official duty. See, e.g., Levine v. Brevard County Sheriff's Dept., 658 So.2d 1044 (Fla. 1st DCA 1995) (an off-duty police officer witnessed a traffic violation which caused a multi-vehicle collision including the officer's own vehicle, and after the officer worked the accident scene, he discovered that he had been injured himself); Hanstein v. City of Fort Lauderdale, 569 So.2d 493 (Fla. 1st DCA 1990) (an off-duty officer made a conscious decision to issue a traffic citation immediately before the accident causing his injury). The common feature of these cases is that the officer's employment duty status is changed by events the officer has observed. This activation of the officer's duty status may even be required by the employer's policy. See Levine.
In the present case, the evidence is not sufficient to sustain a finding that Sergeant Millerick was discharging his primary responsibility as a police officer at the time of his accident. The purported law enforcement connection stems from the encounter between Millerick and Billy Martino but this did not arise from a desire to discharge a legitimate law enforcement function. On the contrary, the record plainly reveals that Millerick went out for a night of social drinking. His activities throughout the course of the night were not transformed into a law enforcement mission simply because he got into an argument with a man who happened to be a potential suspect. In short, the encounter in the bar did not occur "under circumstances reasonably consistent" with the manner in which an officer's primary responsibility would be discharged. See § 440.091(2) Fla.Stat.
Moreover, the connection between the encounter at the Polo Club and the accident on the causeway is attenuated. There is no evidence that the two men accosted Millerick in the parking lot because he had been involved in an altercation inside the bar or because he was a police officer. Likewise, there is no evidence that the men thought to be chasing Millerick on the causeway were the same two men he encountered in the parking lot. From all that appears in the record, these incidents may have been unrelated to the confrontation in the bar nearly one half-hour earlier.
In summary, we conclude that the evidence is insufficient to support a finding that Millerick was engaged in his primary duty as a police officer at the time of the accident. Therefore, he was not entitled to recover workers' compensation benefits for the injuries he sustained.
Reversed.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] This case is governed by the law in effect in 1987, but the applicable statute remains unchanged in the present version of the Workers' Compensation Law. See § 440.091 Fla.Stat. (1997).